UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARION BARTLE PACKS, ELIZABETH BARTLE, and CHRISTOPHER BARTLE, as Personal Representatives of the ESTATES of STUART H. BARTLE and BARBARA B. BARTLE, | * * * * * | |
| Plaintiffs, | * | Civil Action No. 18-cv-11496-ADB |
| v. | * * | |
| ANDREW BARTLE and MARY FRANCES DAVIDSON, | * * * | |
| Defendants. | | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER

BURROUGHS, D.J.

This action relates to the alleged breach of a fiduciary duty owed to Stuart H. and Barbara B. Bartle ("Senior Bartles") by their son Andrew Bartle ("Andrew") and also to the conversion by Andrew and his wife Mary Frances Davidson[1] ("Davidson") of rent payments collected from the tenants of a multiunit building in New York City that was owned by the Senior Bartles. [ECF No. 1-1 at 1–12 ("Complaint" or "Compl.")]. Andrew's siblings, Plaintiffs Marion Bartle Packs, Elizabeth Bartle, and Christopher Bartle, filed this action in the Superior Court of Middlesex County, Massachusetts on July 3, 2018 as representatives of the Senior Bartles' estates. Id. On July 18, 2018, Defendants removed the case to this Court, and now move to dismiss for lack of personal jurisdiction, or alternatively to transfer the action to the Southern

---

[1] Plaintiffs filed this action against Davidson under the name Mary Davidson Bartle. Davidson has informed the Court that her name is Mary Frances Davidson, and the Court therefore refers to her by that name. [ECF No. 5 at 1 n.1].

District of New York pursuant to 28 U.S.C. § 1404. [ECF Nos. 1, 4]. For the reasons explained herein, the claim against Davidson is dismissed for lack of jurisdiction, and the motion is otherwise denied.

I.     FACTUAL BACKGROUND

This summary draws from allegations in the Complaint and evidence the parties have proffered in support of their jurisdictional arguments. See A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (stating that plaintiffs bear the burden of establishing specific jurisdiction and it is "not enough . . . to 'rely on unsupported allegations in its pleadings'" (citation omitted)).

The Senior Bartles, were Massachusetts residents from the late 1980s until their deaths in 2015 and 2016. [ECF No. 11 ¶ 3]. After moving to Massachusetts, the Senior Bartles continued to own and rent out their prior residence, a brownstone on 95th Street in Manhattan. [ECF No. 10-7 ¶¶ 10, 13]. In 1991, facing tenant and financial difficulties, the Senior Bartles had a meeting at Defendants' Manhattan apartment where they discussed with Defendants the possibility of exchanging the brownstone for a multiunit investment building. Id. ¶ 14; [ECF No. 4-2 ¶ 8]. The Senior Bartles proposed that, in exchange for Defendants assisting them in finding a suitable investment building, managing the investment building, and agreeing to pay any shortfall between rent revenue and carrying costs, Defendants could live in one of the investment building's apartments. [ECF Nos. 4-1 ¶ 17, 4-2 ¶ 8].[2] Roughly two weeks after the Manhattan meeting, Defendants called the Senior Bartles from Manhattan and agreed to those terms. Id. ¶¶ 19–20.

---

[2] Plaintiffs dispute the terms of the agreement between the Senior Bartles and the Defendants.

In 1993, Andrew located, and the Senior Bartles purchased, a multiunit building located at 36 West 11th Street in Manhattan (the "Building"). Id. ¶¶ 24–26. Immediately after closing on the Building, Andrew and his father opened a joint checking account at a branch of Chase Bank in Manhattan (the "Chase Account"). Id. ¶ 35. From 1993 until 2012 or 2013, Andrew, with some help from Davidson, managed the revenues and expenses of the Building using three bookkeepers from the New York City area and then, on an annual basis, supplied information about the Building's finances to the Senior Bartles' tax accountant in Pittsfield, Massachusetts. [ECF Nos. 4-1 ¶¶ 37-38, 10 ¶¶ 30-31; 10-8 ¶ 20].

While managing the finances of the Building, Defendants took tens of thousands of dollars from the Chase Account and used those funds for all manner of personal expenses. Compl. ¶ 23. Plaintiffs allege that Andrew concealed this misuse of funds from the Senior Bartles and later from Plaintiffs. Id. ¶ 26. Andrew acknowledges that he withdrew money from the Chase Account for personal expenses, but maintains that the withdrawals were recorded as loans and were permissible pursuant to his agreement with the Senior Bartles. [ECF No. 4-1 ¶ 36]. In addition to depositing money into the Chase Account, beginning in 2008, Andrew claims that he sent rent money for one of the Building's units directly to his father, Stuart Bartle, to supplement his income. [ECF No. 12-4 at 4]. Davidson and the Senior Bartles occasionally had conversations about the Senior Bartles' estate plans and the Building in Massachusetts, including one instance in 2007 when Stuart Bartle told Davidson that after the Senior Bartles died, the building would be sold and Defendants would have to move, and another occasion in 2011 when Stuart Bartle informed Davidson that Defendants would need to pay rent. [ECF No. 10-8 ¶¶ 24, 27].

On December 20, 2012, the Senior Bartles transferred title to the Building to the Bartle Family Limited Partnership and gifted each of their children 10 percent ownership interests in that entity. [ECF No. 4-1 ¶ 39; see ECF No. 10-9 at 2, 9]. Shortly thereafter, the Senior Bartles transferred responsibility for managing the building to Plaintiffs Marion Bartle Packs and Elizabeth Bartle, due at least in part to enmity that had developed between Andrew and his brother, Plaintiff Christopher Bartle. [ECF No. 4-1 ¶ 40]. Between October 2011 and May 2013, Andrew sent numerous emails concerning the Building's finances to his sisters, both of whom live in Massachusetts. [ECF No. 11 ¶ 12]. During that time period, Andrew resisted disclosing financial information related to the Building, and claimed in emails to his sisters in Massachusetts that he could not locate the information, that he needed help from a bookkeeper, and that certain financial information had been lost. Id. ¶ 9. In all, Andrew sent more than twenty emails related to the Building's finances and the Senior Bartles' trusts and estate planning to individuals in Massachusetts, many of which Plaintiffs claim contained false statements. [See generally ECF No. 11-1].

The Building was the Senior Bartles single largest asset. They arranged for their remaining 60 percent interest in the Building, which was owned through the Bartle Family Limited Partnership, to be transferred to their children after their deaths through a pair of revocable Massachusetts trusts (the "Massachusetts Trusts"). [See ECF Nos. 10 ¶¶ 16, 21; 12-5]. In January 2014, the Senior Bartles each executed amendments to the Massachusetts Trusts which had the effect of reducing the interest in the Building that Andrew would receive following the Senior Bartles' deaths by an "offset" that was apparently intended to compensate for the submarket rent that Andrew had paid for his family's apartment in the Building over the years. [ECF No. 10-9 at 2, 9]. Defendants were "very unhappy" when they learned of the offset

4

following Stuart Bartle's death in late 2015, and responded by retaining counsel. [See ECF No. 12-4]. The legality of the offset is among the issues being contested in Massachusetts state court, where Andrew (but not Davidson) is pursuing claims against the Plaintiffs and has been deposed about, among other things, the agreement reached with the Senior Bartles in the early 1990s. [ECF No. 10 ¶¶ 12–13]. Andrew has been actively involved in the state court litigation for two or more years, has filed numerous pleadings, and personally appeared at hearings and depositions in the Commonwealth. Id. ¶¶ 3–5. In connection with this state litigation, Davidson submitted an affidavit in support of Andrew's claims and appeared at some hearings. Id. ¶¶ 5–6, 13.

The Defendants reside in New York. They have New York driver's licenses and are registered to vote in New York. They do not have real property or bank accounts in Massachusetts. The only property they own in Massachusetts is personal property that was distributed to Andrew from the Senior Bartles' estates. [ECF Nos. 4-1 ¶¶ 58–64, 4-2 ¶¶ 26–32].

## II. STANDARD OF REVIEW

Plaintiffs bear the burden to establish that specific jurisdiction exists over each Defendant. A Corp., 812 F.3d at 58 (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the "prima facie" standard governs its determination. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, plaintiffs must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp., 812 F.3d at 58 (quoting Phillips, 530 F.3d at 26). "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts." Platten v. HG Berm. Exempted Ltd., 437 F.3d

118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  The Court takes as true whatever properly documented facts plaintiffs proffer, construes those facts in the light most favorable to the plaintiffs, and considers facts put forward by defendants to the extent they are uncontradicted.  See Phillips, 530 F.3d at 26; Platten, 437 F.3d at 134 (citation omitted).

## III. JURISDICTION

The Due Process Clause of the Fourteenth Amendment allows a state court to exercise jurisdiction over a nonresident only where the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).  "To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

### A. Massachusetts Long-Arm Statute

"[T]he long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process."  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017); see also Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) ("The requirements of the Massachusetts long-arm statute are similar to—although not necessarily the same as—those imposed by the Due Process Clause." (citations omitted)).  Plaintiffs allege that Defendants are subject to jurisdiction pursuant to sections 3(a), 3(c), and 3(d) of the Massachusetts long-arm statute, which allow for the exercise of "personal

6

jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:"

> (a) transacting any business in this commonwealth; . . . (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3. "The 'arising from' clause in [the long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 112 (D. Mass. 2003). "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994)). The arising from inquiry asks "did the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury." Id. (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997)).

Section 3(a)'s "reference to 'transacting any business' does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (quoting Ross v. Ross, 358 N.E.2d 437, 439 (Mass. 1976)). "[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'" Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (quoting Workgroup Tech. Corp., 246 F. Supp. 2d at 110); see, e.g., Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983)

7

(holding that law school's mailing of application information and acceptance letter to Massachusetts resident was sufficient to satisfy section 3(a)). Although section 3(a) "has been construed broadly," Tatro, 625 N.E.2d at 551 (citations omitted), the test "is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party," Lyle Richards Int'l, 132 F.3d at 112. "[A]n isolated (and minor) transaction with a Massachusetts resident may be insufficient, [but] generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." Tatro, 625 N.E.2d at 551–52.

Although the Building is in New York and the alleged acts of conversion at the core of this case did not occur in Massachusetts, under the prima facie standard applicable here, the Court must credit the evidence that favors the Plaintiffs. Accepted as true, that evidence shows that Andrew entered into a fiduciary relationship with the Senior Bartles to manage the Building with the knowledge that they were Massachusetts residents, and then engaged in regular communications with the Senior Bartles and their accountant in Massachusetts about the Building's finances and concealed information from his sisters, including by false statements and omissions in communications sent to Massachusetts after Plaintiffs took over management of the Building. Compl. ¶ 39; [ECF No. 11 ¶ 9; ECF No. 12 ¶ 3]. The claim against Andrew for breach of fiduciary duty arises from that conduct, and sections 3(a) therefore permits exercise of personal jurisdiction if, as the Court holds below, that jurisdiction is consistent with due process limits. See Ealing, 790 F.2d at 982–83 (finding section 3(a) of the Massachusetts long-arm statute satisfied and noting that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state" (quoting Hanson v. Denckla, 357 U.S.

8

235, 253 (1958))). Also, the Court infers under the prima facie standard that Andrew's annual conveyance of financial information to the Senior Bartles' accountant in Massachusetts allowed him to retain access to the Chase Account and that those contacts with Massachusetts are thereby a "but for" cause of his alleged conversion of funds. Because the Court finds that the claims against Andrew falls within section 3(a), it will not address sections 3(c) or 3(d) with respect to Andrew.

Although the Massachusetts long-arm statute permits jurisdiction to be asserted over Andrew, it does not permit the assertion of jurisdiction over Davidson. The conversion claim against Davidson appears premised upon acts that allegedly occurred while Andrew managed the Building from 1993 until 2012 or 2013. Compl. ¶ 23. Plaintiffs do not assert a claim for breach of fiduciary duty against Davidson, and unlike Andrew, the Court does not have evidence showing that she made inaccurate representations to individuals in Massachusetts that are a "but for" cause of any claim against her. Plaintiffs argue that Davidson's communications with the Senior Bartles in Massachusetts and the conversation during which she and Andrew agreed to manage the Building support jurisdiction under Massachusetts' long-arm statute. [See ECF No. 9 ¶ 11–16]. With respect to the agreement to manage the Building, although the Senior Bartles were Massachusetts residents at the time of that phone call, the agreement was initially solicited by the Senior Bartles in New York and agreed to by Davidson from New York. Standing alone, that phone call is insufficient to establish that Davidson was transacting business in the Commonwealth under Section 3(a). Id.; see Filmore v. VSP N. Am., LLC, No. 18-cv-10256-MBB, 2019 WL 184075, at *6 (D. Mass. Jan. 14, 2019) (holding advertisements placed in the *Boston Globe* without intent to avail defendants of the privilege of transacting business in Massachusetts and subsequent transactions insufficient to satisfy section 3(a)); Bos. Post Partners

9

II, LLP v. Paskett, No. 15-cv-13804-FDS, 2016 WL 3746474, at *8 (D. Mass. July 8, 2016) (alleged transactions, assistance, and encouragement outside Massachusetts that furthered another defendant's breach of fiduciary duty to the plaintiff did not constitute an act or omission in the Commonwealth); Intech, Inc. v. Triple "C" Marine Salvage, Inc., 826 N.E.2d 194, 198 (Mass. 2005) (holding advertisement and sale of boats was insufficient to establish jurisdiction despite the purchase price being negotiated by phone with plaintiff's agent in Massachusetts); see also Droukas v. Divers Training Acad., Inc., 376 N.E.2d 548 (Mass 1978).[3] With respect to Davidson's discussions with the Senior Bartles in Massachusetts, Davidson's affidavit shows that she received some information from the Senior Bartles in Massachusetts about their choices concerning the Building, but it does not show that she transacted business in the Commonwealth or that her communications in the Commonwealth were a "but for" cause of the conversion claim against her. [See ECF No. 10-8 ¶¶ 24, 27, 32].

The remaining asserted bases for jurisdiction are events that occurred after the alleged conversion of funds.[4] Specifically, Plaintiffs argue that the Court should find Davidson transacted business or caused tortious injury in the Commonwealth based on Defendants' retention of counsel in 2016 and her support for Andrew's claims in Massachusetts state court.

---

[3] Andrew and Davidson's attestations are silent as to where the Senior Bartles were at the time they entered into the agreement with them. Even assuming the Senior Bartles were in Massachusetts at the time of that phone call, for Davidson the call would have been an isolated communication with a party in the Commonwealth and would not support the conclusion that she was transacting business here.

[4] Although the Complaint alleges that the Defendants concealed the conversion of funds until Andrew was deposed in 2017 in connection with the state court litigation, the Complaint indicates that Andrew no longer had control of the Chase Account after a date in 2013. [Compl. ¶¶ 3, 26].

10

[ECF No. 9 at 6–10].[5] Those acts may constitute transacting business in the Commonwealth, but they are not a "but for" cause of the claim of conversion asserted against Davidson, which is premised on events that occurred years earlier. Therefore, section 3(a) of the Massachusetts long arm statute does not support jurisdiction over Davidson.

Section 3(c), jurisdiction for "causing tortious injury by an act or omission in this commonwealth," is also inapplicable to Davidson. Mass. Gen. Laws ch. 223A, § 3(c). Unlike the numerous false and evasive statements Andrew is alleged to have made to the Senior Bartles, their agents, and Plaintiffs in Massachusetts that give rise to the breach of fiduciary duty claim against him, Plaintiffs have not identified any act by Davidson in Massachusetts from which the conversion claim against her arises.

Likewise, section 3(d), which confers jurisdiction for "causing tortious injury in this commonwealth by an act or omission outside this commonwealth" where a defendant, *inter alia*, engages in a persistent course of conduct in the Commonwealth, does not support a finding of jurisdiction over Davidson for two reasons. Mass. Gen. Laws ch. 223A, § 3(d). First, Plaintiffs have not shown a tortious injury in the Commonwealth that resulted from the alleged conversion by Davidson. "The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place." United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999) (citing Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 619 (5th Cir.1989)). Second, even setting aside the First Circuit's holding that "section 3(d) requires that the injury itself occur in Massachusetts, and does not apply merely because the plaintiff feels the effects of a tortious injury there," id. at 38 (citations omitted), Davidson's contacts with Massachusetts are not the

---

[5] In their briefing of the issue, Plaintiffs repeatedly refer to Andrew and Davidson collectively as "they" or "Defendants," but Andrew seemingly handled most of, if not all of, the substantive communications to and from parties in Massachusetts about his parents' finances and affairs.

11

sort of regular business activity, persistent course of conduct, or derivation of substantial revenue from the Commonwealth that section 3(d) is meant to capture, see Mass. Gen. Laws ch. 233A, § 3(d); Comer v. Comer, 295 F. Supp. 2d 201, 211 (D. Mass. 2003) (holding that three visits to Massachusetts and sending two magazine subscriptions to plaintiff in Massachusetts "does not even come close to constituting a 'persistent court of conduct' under subsection (d)"). Plaintiffs' evidence that Davidson engaged in a persistent course of conduct in Massachusetts amounts to the fact that she traveled to the state in connection with the state court litigation and to attend family gatherings on several occasions. [ECF Nos. 9 at 12, 17–18; 10 ¶ 15]. Such sporadic contacts do not amount to a persistent course of conduct.

Because the Court cannot exercise jurisdiction over Davidson given the limitations of the Massachusetts long-arm statute, she must be dismissed from this action.

### B. Jurisdiction Consistent with Due Process

There are two different avenues by which a court may arrive at personal jurisdiction consistent with due process: general and specific jurisdiction. See Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 144 (1st Cir. 1995). The Defendants are not subject to general jurisdiction in Massachusetts, and the jurisdictional requirements of due process thus turns on whether they are subject to specific jurisdiction based on the relationship between their contacts with Massachusetts and the claims asserted. See id.[6] The First Circuit has "broken the

---

[6] Plaintiffs argue, contrary to precedent and without citation to case law, that both Defendants are subject to general jurisdiction in Massachusetts. [ECF No. 9 at 10–11]. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). The Defendants are domiciled in New York and are subject to general personal jurisdiction in New York, not Massachusetts. The Court need not delve further into delineating the legal bounds of general jurisdiction as it is clear that Defendants are not at home in the Commonwealth.

12

minimum contacts analysis into three categories—relatedness, purposeful availment, and reasonableness." Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007).

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Id. (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002)). "This inquiry is highly 'fact-specific.'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). "[T]he constitutional test is 'not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.'" Id. (quoting Kulko v. Superior Court of Cal., 436 U.S. 84, 92 (1978)).

The First Circuit has explained that "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Ticketmaster-New York, 26 F.3d at 210. Although the due process inquiry for specific jurisdiction is fact specific, the First Circuit has explained that in considering the "reasonableness" prong, courts should consider the Gestalt Factors: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995).

Here, for the reasons explained supra, Plaintiffs have demonstrated that the claims made against Andrew arise out of and relate to his contacts with Massachusetts. Andrew has availed himself of the privilege of conducting activities in the Commonwealth, including through his repeated contact with the Senior Bartles and their agents, whom Andrew knew to be in Massachusetts, for the purpose of maximizing his ownership interest in the Building. Under these circumstances, the exercise of personal jurisdiction over Andrew is reasonable.

In addition to the connections with Massachusetts discussed supra with regards to the Massachusetts long-arm statute, Andrew filed claims against Plaintiffs in Middlesex County Superior Court that were premised upon the same 1993 agreement with the Senior Bartles at issue here. [ECF No. 10 ¶¶ 1–4]. By deciding to pursue related claims against Plaintiffs in the Superior Court of Middlesex County, Andrew consented to personal jurisdiction for claims "arising out the same nucleus of operative fact" that might later be filed in that court, as were the claims made here. See Tuckerbrook Alt. Invs., LP v. Banerjee, 754 F. Supp. 2d 177, 183 (D. Mass. 2010) (separate proceeding filed before the District Court of Massachusetts constituted submission to the Court's jurisdiction in both cases); see also Gen. Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 25 (1st Cir. 1991) (holding that asserting counterclaims constitutes assent to jurisdiction unless the counterclaims are put forward as a conditional position that will not be independently pressed if the primary action is dismissed for lack of personal jurisdiction).

The Court therefore has personal jurisdiction over Andrew both because of the relationship between his contacts with Massachusetts and the claims made, and because he consented to personal jurisdiction through pursuit of related claims before the court where this action was initially filed.

## IV. VENUE

Defendants argue that if this case is not dismissed, it should be transferred to the Southern District of New York in accordance with 28 U.S.C. § 1404(a). [ECF No. 5 at 14–18]. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The change of venue provision "was designed as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981) (quoting Van Dusen v. Barrack, 376 U.S. 612, 636 (1964)). "A motion to transfer under § 1404(a) … calls on the District Court to weigh in the balance a number of case-specific factors." Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 51 (1st Cir. 1990) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). The decision to transfer a case under § 1404(a) lies within the discretion of the trial court, but "there is a presumption in favor of the plaintiff's choice of forum and the defendant must bear the burden of proving that a transfer is warranted." Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012). Factors to be considered in determining whether transfer is warranted include: (1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake. Avci v. Brennan, 232 F. Supp. 3d 216, 219 (D. Mass. 2017) (citing Momenta Pharm., 841 F. Supp. 2d at 522).

Here, the Plaintiff's choice of forum favors keeping the case in Massachusetts. The Southern District of New York is significantly less convenient for Plaintiffs, although somewhat

more convenient for Defendants. Defendants' interest in the convenience of litigation this action in the Southern District of New York is, however, mitigated by the ongoing litigation in Massachusetts state court given that they already have Massachusetts attorneys who are familiar with the facts underlying this dispute as a result of that litigation and are committed to litigation in the Massachusetts courts. C.f. Johnson v. N.Y. Life Ins. Co., No. C.A. 12-11026-MLW, 2013 WL 1003432, at *2 (D. Mass. Mar. 14, 2013) ("[T]he pendency of related litigation in the transferee forum weighs heavily in favor of transfer."); [see also ECF No. 10 ¶ 26 ("Depositions already taken and the documents already produced in the Middlesex Action form the basis for this action.")]. The cumulative inconvenience to witnesses would not be significantly reduced by transferring this case because, in addition to the potential witnesses residing in New York, there are multiple potential witnesses who reside in Massachusetts. The connection between the potential forums and the issues does not weigh heavily in favor of transfer, where although New York has a stronger connection with the conduct that forms the basis of the conversion claim, Massachusetts arguably has a stronger connection with the conduct at issue in the breach of fiduciary duty claim. The Defendants have not argued that the law to be applied favors transfer, and there are not significant state or public interests at stake. Therefore, the presumption in favor of Plaintiffs' choice of forum is not overcome by the Defendants' or any witness' interest in a more convenient forum.

V. **CONCLUSION**

Accordingly, the claim against Mary Frances Davidson (filed against "Mary Davidson Bartle") is <u>DISMISSED</u> for lack of jurisdiction, and the motion to dismiss, or alternatively to transfer, [ECF No. 4], is <u>DENIED</u> with respect to the claims against Andrew Bartle.

16

**SO ORDERED.**

March 6, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE